JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Willie Hicks ("Hicks"), appeals from the decision of the Cuyahoga County Court of Common Pleas which found Hicks guilty after a trial to the bench. Finding no error in the proceedings below, we affirm.
 {¶ 2} The following facts give rise to this appeal. In the late evening hours of March 16, 2002, Antoine Griffin ("Griffin") and Malcolm Deramus ("Deramus") happened to meet outside the apartment building at 1727 Chapman Avenue in East Cleveland Deramus watched Griffin count his winnings from a gambling game earlier in the day. Deramus indicated Griffin won between $350 and $400 from Hicks while playing dice. Griffin and Deramus bought a "wet" cigarette from Jake Harris ("Harris") and smoked it outside the building.
 {¶ 3} Deramus testified that Hicks called Griffin on his cell phone several times trying to resume their dice game and even hung his head out of a window of the apartment building to get Griffin to come up and play. Griffin eventually entered the building and headed up to apartment number 8 on the third floor.
 {¶ 4} Francine McCall ("McCall") explained that she and Leon May ("May") saw Griffin and Deramus outside of the building before they went inside. McCall and May went in and saw two other individuals standing in the hallway, "Kam" and "Peanut." McCall and May proceeded upstairs to apartment number 8 and acquired crack cocaine from Hicks, who was in the apartment alone. They proceeded back downstairs to apartment number 3 on the first floor to smoke their crack cocaine.
 {¶ 5} While smoking, McCall heard a loud pop. She looked outside the apartment door, did not see anything, and went back inside. After two more pops, McCall and May ran to the door. May went upstairs to apartment number 8, ran back down and told McCall that Griffin was dead. Meanwhile, McCall saw Harris, who looked scared, coming down the stairs. McCall also testified that she later saw Hicks dangle from a second story window and drop to the ground below. May ran outside and told Officer Scott Vargo ("Officer Vargo") that there was a male shot inside of 1727 Chapman.
 {¶ 6} Harris testified that when he entered the building he heard the first pop. "Kam" and "Peanut" were at the door and let him in. Harris testified that he went up to apartment 8 and saw Griffin dead in the chair and Hicks going through Griffin's pockets. Harris ran out of the building and heard two more shots. Harris was yelling, "They are shooting. They are shooting." Harris ran to a friend's house. Harris testified that a few days later Hicks called him and asked him if he was the one at the door. Harris claimed he did not respond but did ask Hicks why he shot Griffin, to which Hicks did not respond but said he was going to turn himself in.
 {¶ 7} Hicks went to the East Cleveland police station and made a statement claiming he was not at 1727 Chapman on the night in question but rather was with his family and girlfriend at a few parties. Detectives confiscated all of Hicks's clothing and sent it to BCI for testing.
 {¶ 8} The police found Griffin dead in a chair in apartment number 8. His body was in direct view of the door, and between his feet lay two dice that revealed "snake eyes." Officer Vargo testified "It's double ones. It's what you don't want if you are playing dice, because it means you lose." Blood was spattered on boxes and walls to the left of the victim. Three spent shell casings were also located to the left of the victim. Griffin's money from the earlier dice game was missing.
 {¶ 9} The autopsy revealed that Griffin had three gunshot wounds to the head. The stippling around the wounds indicated he was shot at close range, between six and twelve inches. Griffin had 14 rocks of suspected crack cocaine in his mouth. In addition, he had cocaine, PCP, and marijuana in his system. Griffin was 27 years of age.
 {¶ 10} Clothing from two individuals located at the scene, as well as Hicks's clothing, was sent to BCI for testing. The results indicated that Griffin's blood was not on any of the clothing tested. In addition, the dice, shell casings, and a pop can were tested for fingerprints, but nothing of value was recovered.
 {¶ 11} Hicks was indicted for murder in violation of R.C.2903.02 with one- and three-year firearm specifications. Hicks pled not guilty, waived a jury, and tried the case to the bench in October 2003. Hicks was found guilty as charged.
 {¶ 12} Hicks timely appeals this decision of the trial court and advances four assignments of error for our review.
 {¶ 13} "I. Willie Hicks was deprived of his liberty without due process of law by his conviction for murder, as said conviction was not supported by sufficient evidence to prove his guilt beyond a reasonable doubt."
 {¶ 14} Hicks argues that there is no direct evidence that he killed Griffin and the circumstantial evidence is insufficient to prove he committed the murder. Moreover, Hicks argues that the trial court discounted Harris's testimony, leaving the court with little or no evidence to prove Hicks shot Griffin. Finally, Hicks argues that it is more likely that Harris committed the crime; consequently, there exists reasonable doubt, and his conviction should be overturned.
 {¶ 15} "An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact." State v.Jenks (1991), 61 Ohio St.3d 259, 273. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph two of the syllabus. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997),78 Ohio St.3d 380, 386-387.
 {¶ 16} In Jenks, the Supreme Court of Ohio held that "when the state relies on circumstantial evidence to prove an element of the offense charged, there is not a requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction."61 Ohio St.3d at 273. "`Circumstantial evidence' is the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind." State v.Duganitz (1991), 76 Ohio App.3d 363, quoting Black's Law Dictionary (5 Ed. 1979) 221. "It is not essential that there should be a mathematical demonstration or direct evidence of every essential fact in a case, but the circumstances, to have the effect of establishing an allegation of fact, must be such as to make the fact alleged appear more probable than any other; the fact in issue must be the most natural inference from the facts proved; it is not sufficient if the conclusion must rest wholly upon guess or conjecture." Id. at 367.
 {¶ 17} When rendering its verdict, the trial court stated "* * * `In a play cast in hell, there are no angels,' and this is certainly true in this case. Most of the witnesses relied upon by the State are not angels, and, in fact, other than the professionals, they all had extensive criminal records. Nonetheless, the Court was — even though considering their questionable credibility, I had to weigh their testimony in light of all the evidence. I will say that for reasons that became more and more apparent I was forced to discount almost entirely the testimony of Jake Harris, and, however, even without that testimony, I find that the State has met its burden of proof and has proved this defendant guilty as charged by evidence beyond a reasonable doubt."
 {¶ 18} After reviewing the entire record, we cannot say that the trial court erred when it found Hicks guilty as charged. During trial, two witnesses attested that Griffin had beaten Hicks at dice earlier in the day and won several hundred dollars from him. The testimony further revealed that Hicks was eager to resume his game of dice with Griffin and continued to badger him until Griffin entered the building to play. Several witnesses put Hicks in the apartment alone immediately prior to the shooting. Although there is conflicting testimony as to whether Harris entered with Griffin or after Griffin, it is clear from the testimony that Harris was halfway out of the building immediately following the last two shots, difficult to accomplish if he was, in fact, the shooter. Furthermore, Harris ran out yelling: "They are shooting. They are shooting." Again, inconsistent actions for the shooter. The testimony leaves only one individual with the time, opportunity, and motive to kill the victim, and that person is Hicks.
 {¶ 19} We find unpersuasive Hicks's argument that because his clothes did not have the victim's blood on it, he was not the shooter. First, Hicks's wardrobe was collected days after the incident. Second, there is no testimony that indicates any of the clothes tested were, in fact, the clothes Hicks wore on the night of the murder. Finally, there is no testimony that indicates the shooter would have had blood on him. Therefore, the fact that Hicks's clothing did not have Griffin's blood on it is inconclusive at best.
 {¶ 20} Lastly, the lack of fingerprints does not override the fact that several individuals saw Hicks in the apartment that night.
 {¶ 21} Hicks first assignment of error is overruled.
 {¶ 22} "II. Willie Hicks was deprived of his Constitutional right to a fair trial before an unbiased fact finder, by the introduction of prejudicial other acts evidence in the state's case in chief."
 {¶ 23} Hicks argues it was plain error when the state elicited testimony that Hicks sold drugs on the night in question. Hicks argues that this is "other acts testimony," which is prohibited by Evid.R. 404(B), as well as prejudicial, and should have been excluded by Evid.R. 403(A). We disagree.
 {¶ 24} Evid.R. 404(B) states in pertinent part "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity there with." In the case at bar, the testimony that Hicks complains of was not offered to prove he acted in conformity therewith, and thus its exclusion was not required under Evid.R. 404(B). This testimony merely set the stage as to why all of these individuals were at that building on the night of Griffin's murder. The location of the murder was an abandoned apartment building that was frequented by drug dealers and drug users. Anyone at the building on that evening was either buying, selling, or using drugs.
 {¶ 25} Evid.R. 403(A) requires the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issue.
 {¶ 26} Hicks argues that the fact that he allegedly sold drugs to some of the witnesses tainted the trial court's view of him and he was convicted as a result of it. We find Hicks's argument unrealistic. As the trial court indicated, "In a play cast in hell, there are no angels," and, as such, the trial court took into consideration all of the surrounding circumstances and judged the credibility of all of the witnesses and the evidence accordingly. It is nonsensical to think the trial court found Hicks guilty of murder solely because he allegedly sold drugs. It is clear from the evidence that most of the witnesses, as well as the victim, sold and used drugs regularly, and the murder was not the result of a drug deal gone bad but rather a gambling game gone wrong.
 {¶ 27} Hicks second assignment of error is overruled.
 {¶ 28} "III. Willie Hicks was denied his Constitutional right to effective assistance of counsel by trial court's failure to make objections or preserve the record, thereby depriving Mr. Hicks of an appellate issue."
 {¶ 29} Hicks argues that his counsel was ineffective because he failed to object when the prosecutor elicited testimony that Hicks allegedly sold drugs on the night in question. Hicks argues that keeping this information out was imperative for him to receive a fair trial. We disagree.
 {¶ 30} A claim of ineffective assistance of counsel requires proof that counsel's "performance has fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from that performance. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph two of the syllabus; see, also, State v. Lytle (1976), 48 Ohio St.2d 391. The establishment of prejudice requires proof "that there exists a reasonable probability that were it not for counsel's errors, the result of the trial would have been different." State v.Bradley, supra, paragraph three of the syllabus. The burden is on appellant to prove ineffectiveness of counsel. State v.Gray, Cuyahoga App. No. 83097, 2004-Ohio-1454, citing State v.Smith (1985), 17 Ohio St.3d 98. Trial counsel is strongly presumed to have rendered adequate assistance. Id. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. Id. Finally, failure to object to error, alone, is not sufficient to sustain a claim of ineffective assistance. State v. Fears (1999), 86 Ohio St.3d 329.
 {¶ 31} As stated above, it was not error for the court to allow testimony regarding the circumstances of the evening in question; therefore, it was not ineffective for counsel not to object to the testimony.
 {¶ 32} Hicks third assignment of error is overruled.
 {¶ 33} "IV. The trial court was without jurisdiction to conduct a bench trial, because the jury waiver in the case at bar was not executed in strict compliance with the statutory requirements."
 {¶ 34} Hicks argues that the trial court lacked jurisdiction to hear the case because the jury waiver was defective. Hicks claims that it was defective because it was not signed in open court and it was not journalized prior to trial. We disagree.
 {¶ 35} In State v. Pless, 74 Ohio St.3d 333, 339,1996-Ohio-102, the Supreme Court of Ohio held "that in a criminal case where the defendant elects to waive the right to trial by jury, R.C. 2945.05 mandates that the waiver must be in writing, signed by the defendant, filed in the criminal action and made part of the record thereof. Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury."
 {¶ 36} In State v. Huber, Cuyahoga App. No. 80616, 2002-Ohio-5839, we stated: "[T]his Court has held that it is not necessary that the waiver be signed in open court to be valid so long as the trial court engages in a colloquy with the defendant extensive enough for the trial judge to make a reasonable determination that the defendant has been advised and is aware of the implication of voluntarily relinquishing a constitutional right." Id. citing State v. Ford, Cuyahoga App. Nos. 79441 and 79442, 2002-Ohio-1100.
 {¶ 37} Finally, in State v. Bryant, Cuyahoga App. No. 79841, 2002-Ohio-2136, this court stated that "the critical issue is not whether the filing occurred prior to the start of trial, but whether the filing ever occurred." (Emphasis in original.)
 {¶ 38} In the instant case, Hicks signed the jury waiver form prior to the hearing. At the hearing, the court stated: "I have before me at this time a Defendant's Voluntary Waiver of Jury Trial. Mr. Hicks, this is your signature on this document?" Hicks responded "Yes." The court then went on to explain the rights he was waiving and inquired as to whether he was induced into signing the waiver. Hicks acknowledged he understood, he was not pressured into signing the waiver, and he still chose to waive the jury.
 {¶ 39} That same day, the trial court filed the jury waiver with the clerk of courts. The fact that it was not journalized until a few days later is of no consequence. So long as the waiver was in writing, signed, filed and made part of the record, it is a valid waiver.
 {¶ 40} Hicks's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kilbane, P.J., and Dyke, J., concur.