JOURNAL ENTRY AND OPINION
{¶ 1} Case numbers 86626 and 86627 have been consolidated on appeal. Defendant-appellant, Garrett Taylor, appeals his conviction and sentence after a jury trial in the Cuyahoga County Court of Common Pleas. We affirm in part, vacate in part, and remand for resentencing.
 {¶ 2} Taylor was charged with two counts of aggravated murder with firearm specifications, aggravated robbery with a firearm specification, and having a weapon while under disability. In his second case, he was charged with one count of aggravated robbery with a firearm specification. These charges arose out of a robbery and murder that occurred at 10215 Westchester Avenue, a partially abandoned duplex in the city of Cleveland, in the early morning hours of August 28, 2004. The victim, Willie Baker, Jr., died from multiple gunshot wounds.
 {¶ 3} The victim went to the partially abandoned duplex just before 2:00 a.m. to sell drugs. The abandoned section was commonly used by drug dealers, buyers, and users. After his arrival, the victim placed his crack cocaine on the counter and began to chop it up. The victim told his friend, Abe Norris, to go outside and watch his car, and Norris did.
 {¶ 4} Taylor entered with an unknown male and pulled a gun on the victim and Robert Munds, a friend of the victim and acquaintance of Taylor, and ordered the victim to hand over his money and his jewelry. Meanwhile, Eddy Petty, another friend of the victim and acquaintance of Taylor, entered the house, and Taylor pointed the gun at him and told Petty to empty his pockets. Petty handed over $20. At that time, Taylor's accomplice was placing the victim's drugs, jewelry, and money in a plastic bag. Taylor then ordered the victim to take off his clothes, and the victim complied.
 {¶ 5} Taylor ordered them outside but changed his mind and sent Petty and Munds upstairs. He pointed the gun at Petty and Munds and said, "Both of you all niggers, you all don't know me." Petty and Munds ran upstairs. Petty passed Munds on the stairs, and they heard gunshots.
 {¶ 6} Norris was on the porch with an unknown female, eating, when he heard the shots. Norris started to head to the back of the house to see what had happened, when Taylor came around from the back and pointed a gun in Norris's face and said, "You ain't seen nothing nigger." Taylor and his accomplice ran off. Taylor was carrying the victim's clothes. Norris went back in the house and saw the victim lying on the floor. The victim told Norris to get out of there and get help. Norris left to get help.
 {¶ 7} After hearing the shots, Munds came downstairs and saw the victim. The victim told him to leave and get help. Munds left to get help. Petty waited upstairs for a while, and when he came down, he saw the victim standing outside by the fence. The victim told him to leave and get help. Petty left to get help.
 {¶ 8} Norris returned to help the victim and found him outside by the fence. The victim died on the ground outside of the partially abandoned house. He was shot three times: once in the face, once in the chest, and once in the back. Norris was on the scene when the police arrived. Although all three witnesses, Norris, Petty, and Munds, knew Taylor and the victim, they did not immediately speak with police because all three had outstanding warrants.
 {¶ 9} Taylor was found guilty of all charges. Taylor was sentenced and now appeals, advancing four assignments of error for our review.
 {¶ 10} "I. The trial court erred in not granting defendant-appellant's motion for a mistrial."
 {¶ 11} Under this assignment of error, Taylor complains that Norris was improperly allowed to testify that he saw Taylor earlier in the day buying drugs from the victim. Taylor argues that the trial court should have granted a mistrial because the state introduced improper character evidence.
 {¶ 12} The grant or denial of a motion for mistrial rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. State v.Iacona, 93 Ohio St.3d 83, 100, 2001-Ohio-1292. In addition, the applicable standard of review for questions regarding the admission of evidence is abuse of discretion. State v. Russell,
Cuyahoga App. No. 83699, 2005-Ohio-2998.
 {¶ 13} Taylor argues he was prejudiced when the state elicited testimony that Taylor bought drugs from the victim earlier in the day. Taylor maintains that this is "other acts testimony," which is prohibited by Evid.R. 404(B) and should have been excluded.
 {¶ 14} Evid.R. 404(B) states, in pertinent part, as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." In the case at bar, the testimony that Taylor complains of was not offered to prove he acted in conformity therewith, and thus its exclusion was not required under Evid.R. 404(B). This testimony merely reveals how Taylor and the victim knew each other and that Taylor knew where to find the victim.
 {¶ 15} In a similar case, State v. Hicks, Cuyahoga App. No. 83981, 2004-Ohio-5223, the defendant argued that because the state was allowed to introduce testimony that he had sold drugs to some of the witnesses prior to the murder, the trial court's view of him was tainted and he was convicted of murder as a result. This court found that the testimony was not offered to prove that the defendant acted in conformity therewith, in violation of Evid.R. 404(B), but rather to set the stage as to why all of the individuals were at that building on the night of the victim's murder. The victim in Hicks was murdered at an abandoned apartment building that was frequented by drug dealers and drug users. We stated the following: "It is nonsensical to think the trial court found Hicks guilty of murder solely because he allegedly sold drugs."
 {¶ 16} In the case at bar, the jury was well aware that all of the witnesses were drug users and that the victim himself was a drug dealer. As such, it is nonsensical to think the jury was swayed or tainted by the fact that Taylor bought drugs from the victim earlier in the day. The trial court, therefore, did not abuse its discretion when it denied Taylor's motion for mistrial. Taylor's first assignment of error is overruled.
 {¶ 17} "II. The verdict of the jury finding defendant-appellant guilty of aggravated murder is against the manifest weight of the evidence."
 {¶ 18} Taylor was convicted, inter alia, of aggravated murder in violation of R.C. 2903.01. R.C. 2903.01 states, "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *." Taylor argues that the state failed to prove beyond a reasonable doubt the element of "prior calculation and design." He cites State v. Cotton (1978), 56 Ohio St.2d 8,11, arguing that instantaneous deliberation is not sufficient to constitute prior calculation and design. Consequently, Taylor contends that his conviction is against the manifest weight of the evidence.
 {¶ 19} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Leonard, 104 Ohio St.3d 54, 68,2004-Ohio-6235 (internal quotes and citations omitted).
 {¶ 20} In State v. Cassano, 96 Ohio St.3d 94, 108, 2002-Ohio-3751, the Supreme Court of Ohio stated as follows: "No bright-line test exists that `emphatically distinguishes between the presence or absence of "prior calculation and design.'"State v. Taylor (1997), 78 Ohio St.3d 15, 20, 676 N.E.2d 82. Yet `"prior calculation and design" is a more stringent element than the "deliberate and premeditated malice" * * * required under prior law.' State v. Cotton (1978), 56 Ohio St.2d 8, 10 O.O.3d 4, 381 N.E.2d 190, paragraph one of the syllabus. `Instantaneous deliberation is not sufficient * * *.' Cotton,
paragraph two of the syllabus. `"Prior calculation and design" requires "a scheme designed to implement the calculated decision to kill."' State v. D'Ambrosio (1993), 67 Ohio St.3d 185, 196,616 N.E.2d 909, quoting Cotton, 56 Ohio St.2d at 11, 10 O.O.3d 4, 381 N.E.2d 190." Each case turns on the particular facts and evidence presented at trial. State v. Taylor (1997),78 Ohio St.3d 15, 20.
 {¶ 21} Here, the evidence revealed that Taylor arrived with a gun, pointed it at the victim, and ordered him to hand over his jewelry and then his clothing. Meanwhile, Taylor's accomplice was removing the victim's money and drugs from the counter and placing it in a plastic bag. When Petty came in, Taylor pointed the gun at Petty and ordered him to empty his pockets. Then Taylor ordered Petty and Munds to go outside but then changed his mind and told them to go upstairs and said, "Both of you all niggers, you all don't know me." Petty and Munds ran upstairs and then heard shots fired. Taylor and his accomplice were seen running from the house and heading to the next block over.
 {¶ 22} It is reasonable to infer that Taylor ordered Petty and Munds upstairs because he planned to kill the victim and he did not want any witnesses. Further, Taylor's statement to Petty and Munds implies that Taylor wanted them to forget they ever saw or knew him so Taylor would not be implicated in the murder. Finally, Taylor was not just trying to injure the victim, as evidenced by the fact that he shot the victim three times, in the face, in the chest, and in the back. As a result, we find that there was substantial evidence upon which a jury could reasonably conclude that Taylor had a plan designed to carry out his calculated decision to kill the victim. Upon our review of the entire record, we conclude Taylor's conviction was not against the manifest weight of the evidence. Accordingly, Taylor's second assignment of error is overruled.
 {¶ 23} "III. The trial court erred in denying the defendant-appellant's motion for acquittal where the evidence is not sufficient to support a verdict."
 {¶ 24} Taylor argues that there was insufficient evidence to prove he was the person who shot and killed the victim. Taylor contends that no one saw who shot the victim and there was another unidentified person present.
 {¶ 25} When an appellate court reviews a record upon a sufficiency challenge, "`the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" Leonard, 104 Ohio St.3d at 67, 2004-Ohio-6235, quotingState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 26} In this case, the testimony revealed that Taylor was the only person seen with a gun. His accomplice was busy bagging the victim's things. Further, immediately following the shooting, Taylor ran out to the front of the house, and as he passed Norris, he stuck his gun in Norris's face and said, "You ain't seen nothing nigger." Finally, when confronted by his employer about whether he killed the victim, Taylor did not deny it and said, "What was I supposed to do?"
 {¶ 27} After viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found that Taylor was the perpetrator and that the essential elements of the crimes were proved beyond a reasonable doubt. Consequently, Taylor's third assignment of error is overruled.
 {¶ 28} "IV. The trial court erred in sentencing the defendant-appellant to consecutive terms of imprisonment when it did not follow the statutory requirements for the imposition of such a sentence."
 {¶ 29} Taylor challenges his sentence and argues that the trial court did not follow R.C. 2929.14(E)(4) when it imposed consecutive sentences. Taylor asks this court to modify his sentence and run the terms concurrently. We decline to modify Taylor's sentence; however, in light of the recent decision of the Supreme Court of Ohio in State v. Foster,
___ Ohio St.3d ___, 2006-Ohio-856, we vacate the sentence and remand the case for a new sentencing hearing. The Foster court held that several provisions of Senate Bill 2, including R.C. 2929.14(E), which governs the imposition of consecutive sentences, violatesBlakely v. Washington (2004), 542 U.S. 296. The court excised R.C. 2929.14(E) from the sentencing statute, and concluded that a trial court is no longer required to make findings or give its reasons for imposing maximum, consecutive, or more than the minimum sentences. Id. The trial court has full discretion to impose a prison term within the statutory range. Id.
 {¶ 30} In accordance with Foster, all cases pending on direct review must be remanded to the trial courts for new sentencing hearings in conformity with the rulings in Foster.
Id. "Under R.C. 2929.19 as it stands without (B)(2)[which was ruled unconstitutional and severed], the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties." Id., citing United States v.DiFrancesco (1980), 449 U.S. 117, 134-136, 101 S.Ct. 426,66 L.Ed.2d 328.
 {¶ 31} Taylor's fourth assignment of error is sustained.
 {¶ 32} Judgment affirmed in part, vacated in part, and case remanded for resentencing.
 {¶ 33} This cause is affirmed in part, vacated in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J., and Rocco, J., concur.