[Cite as *State v. Hicks*, 2013-Ohio-1904.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99119**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# WILLIE HICKS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-427689

**BEFORE:** Kilbane, J., Jones, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** May 9, 2013

**APPELLANT**

Willie Hicks, pro se
Inmate #454-930
Trumbull Correctional Institution
P.O. Box 901
Leavittsburg, Ohio 44430-0901

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Kristen L. Sobieski
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Willie Hicks ("Hicks"), pro se, appeals from the trial court's decision denying his petition for postconviction relief. For the reasons set forth below, we affirm.

{¶2} In September 2002, Hicks was charged with murder, in violation of R.C. 2903.02, with both one- and three-year firearm specifications. Following his waiver of his right to a jury trial, Hicks proceeded to a bench trial in October 2003.

{¶3} The facts of this case were previously set forth by this court in Hicks's direct appeal, *State v. Hicks*, 8th Dist. No. 83981, 2004-Ohio-5223, *discretionary appeal not allowed*, 105 Ohio St.3d 1407, 2005-Ohio-279, 821 N.E.2d 1027 ("*Hicks I*").

> In the late evening hours of March 16, 2002, Antoine Griffin ("Griffin") and Malcolm Deramus ("Deramus") happened to meet outside the apartment building at 1727 Chapman Avenue in East Cleveland. Deramus watched Griffin count his winnings from a gambling game earlier in the day. Deramus indicated Griffin won between $350 and $400 from Hicks while playing dice. Griffin and Deramus bought a "wet" cigarette from Jake Harris ("Harris") and smoked it outside the building.
>
> Deramus testified that Hicks called Griffin on his cell phone several times trying to resume their dice game and even hung his head out of a window of the apartment building to get Griffin to come up and play. Griffin eventually entered the building and headed up to apartment number 8 on the third floor.
>
> Francine McCall ("McCall") explained that she and Leon May ("May") saw Griffin and Deramus outside of the building before they went inside. McCall and May went in and saw two other individuals standing in the hallway, "Kam" and "Peanut." McCall and May proceeded upstairs to

apartment number 8 and acquired crack cocaine from Hicks, who was in the apartment alone. They proceeded back downstairs to apartment number 3 on the first floor to smoke their crack cocaine.

While smoking, McCall heard a loud pop. She looked outside the apartment door, did not see anything, and went back inside. After two more pops, McCall and May ran to the door. May went upstairs to apartment number 8, ran back down and told McCall that Griffin was dead. Meanwhile, McCall saw Harris, who looked scared, coming down the stairs. McCall also testified that she later saw Hicks dangle from a second story window and drop to the ground below. May ran outside and told Officer Scott Vargo ("Officer Vargo") that there was a male shot inside of 1727 Chapman.

Harris testified that when he entered the building he heard the first pop. "Kam" and "Peanut" were at the door and let him in. Harris testified that he went up to apartment 8 and saw Griffin dead in the chair and Hicks going through Griffin's pockets. Harris ran out of the building and heard two more shots. Harris was yelling, "They are shooting. They are shooting." Harris ran to a friend's house. Harris testified that a few days later Hicks called him and asked him if he was the one at the door. Harris claimed he did not respond but did ask Hicks why he shot Griffin, to which Hicks did not respond but said he was going to turn himself in.

Hicks went to the East Cleveland police station and made a statement claiming he was not at 1727 Chapman on the night in question but rather was with his family and girlfriend at a few parties. Detectives confiscated all of Hicks's clothing and sent it to BCI for testing.

The police found Griffin dead in a chair in apartment number 8. His body was in direct view of the door, and between his feet lay two dice that revealed "snake eyes." Officer Vargo testified "It's double ones. It's what you don't want if you are playing dice, because it means you lose." Blood was spattered on boxes and walls to the left of the victim. Three spent shell casings were also located to the left of the victim. Griffin's money from the earlier dice game was missing.

The autopsy revealed that Griffin had three gunshot wounds to the head. The stippling around the wounds indicated he was shot at close range, between six and twelve inches. Griffin had 14 rocks of suspected crack cocaine in his mouth. In addition, he had cocaine, PCP, and marijuana in his system. Griffin was 27 years of age.

Clothing from two individuals located at the scene, as well as Hicks's clothing, was sent to BCI for testing. The results indicated that Griffin's blood was not on any of the clothing tested. In addition, the dice, shell casings, and a pop can were tested for fingerprints, but nothing of value was recovered.

*Id.* at ¶ 2-10.

**{¶4}** The trial court found Hicks guilty as charged and sentenced him to 15 years to life on the murder charge and a merged, consecutive 3-year term on the firearm specifications, for a total of 18 years to life in prison.

**{¶5}** In December 2003, Hicks filed his direct appeal in *Hicks I*. In this appeal, he challenged his conviction, his constitutional rights to a fair trial and effective assistance of counsel, and the validity of his jury waiver. We affirmed Hicks's conviction and found that his constitutional rights were not violated and that his jury waiver was valid. *Id.* at ¶ 21, 27, 31, 39.[1] While his direct appeal was pending, Hicks also filed a petition for postconviction relief with the trial court in August 2004. Hicks claimed that he was denied due process when his request for disclosure of exculpatory evidence was denied. Specifically, Hicks claimed that the prosecutor failed "to provide exculpatory evidence as well as evidence tending to impeach credibility of state's eyewitness." After we rendered our decision in *Hicks I*, the trial court denied Hicks's petition, finding that it was barred by res judicata. The court noted that the sentencing transcript clearly contained trial counsel's assertions that he was unaware of the alleged

---

[1]Hicks's petition to reopen this appeal was denied by this court in *State v. Hicks,* 8th Dist. No. 83981 2005-Ohio-1842.

exculpatory evidence contained in the presentence investigation report. Hicks then appealed from this order in *State v. Hicks*, 8th Dist. No. 86334, 2006-Ohio-798, *discretionary appeal not allowed*, 109 Ohio St.3d 1482, 2006-Ohio-2466, 847 N.E.2d 1227 ("*Hicks II*").

{¶6} In *Hicks II*, Hicks argued that the trial court erred in violation of his due process rights and the right to effective assistance of counsel when it overruled the petition for postconviction relief. We affirmed the trial court's judgment, finding that the alleged error should have been raised on direct appeal. *Id.* at ¶ 6. We stated:

> The statements contained in the PSI regarding both the councilwoman's and the CRI's statements were raised during the sentencing phase of trial and, therefore, could have been an issue in Hicks' direct appeal. Trial counsel even went so far as to advise the trial court that this exact issue would be appealed and requested that the public defender's office be appointed. (Tr. 496.) A further review of both the record and Hicks's postconviction petition shows that the statements made by trial counsel at both the sentencing hearing and in the affidavit supporting postconviction relief contain nearly identical facts, lending further credence to the assertion that no new evidence outside the record existed which prevented the issue from being raised on direct appeal.

*Id.* at ¶ 8.

{¶7} Then in August 2012, Hicks filed, pro se, a second petition for postconviction relief. In this petition, Hicks claimed that he met the exceptions for a successive petition as set forth in R.C. 2953.23, because the United States Supreme Court recognized a new right with respect to the Sixth Amendment right to effective assistance of counsel and the plea bargaining process. Hicks requested an evidentiary hearing and argued that he was denied the right to effective assistance of counsel when his initial

defense counsel gave him inadequate advice about his plea, which caused him to reject the state's plea offer. He further argued that his subsequent defense counsel was ineffective for failing to advise him of the state's plea offer of seven years in prison. The trial court denied Hicks's petition, without a hearing, finding:

> [N]either the defendant's own affidavit nor the transcript of proceedings in this case supports his claims that the representation given to him by either [defense counsel] was in any way deficient, let alone that any alleged deficiencies prejudiced him in any way. The only formal plea offer that appears on the record is the manslaughter/13 years agreed sentenced referenced at pp.5, ff. That offer was fully and adequately conveyed to the defendant, and was rejected by him.

**{¶8}** It is from this order that Hicks appeals, raising the following single assignment of error for review.

### Assignment of Error

The trial court abused it discretion and erred in denying [Hicks's] petition for postconviction relief without an evidentiary hearing.

**{¶9}** In the sole assignment of error, Hicks argues that the trial court abused its discretion when it failed to hold an evidentiary hearing before denying his petition for postconviction relief under R.C. 2953.21. Hicks's argument is unpersuasive.

**{¶10}** In his second petition for postconviction relief, Hicks claims that his petition meets the exceptions set forth in R.C. 2953.23 because the United States Supreme Court in *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), and *Missouri v. Frye*, ___ U.S. ___,132 S.Ct. 1399, 182 L.E.2d 379 (2012), recognized a new right with respect to the Sixth Amendment right to effective assistance of counsel and the plea

bargaining process. He further claims that had he been afforded effective assistance of counsel during the plea bargaining phase, he would have accepted the plea and would have been convicted of a less severe crime.

{¶11} Under R.C. 2953.23, the trial court may not entertain a successive petition for postconviction relief unless the petition meets the following two conditions. First, the petitioner must demonstrate either that he was unavoidably prevented from discovering the facts upon which he relies in the petition, or that the United States Supreme Court has, since his last petition, recognized a new federal or state right that applies retroactively to the petitioner. R.C. 2953.23(A)(1)(a). Second, the petitioner must show by clear and convincing evidence that a reasonable factfinder would not have found him guilty but for constitutional error at trial. R.C. 2953.23(A)(1)(b).

{¶12} The state opposed Hicks's petition, arguing Hicks failed to demonstrate either condition under R.C. 2953.23, his petition is barred by res judicata, and defense counsel was effective. The trial court found that the petition was not untimely and was not barred by res judicata. The court stated:

> [T]he petition is *not* untimely, in that the legal basis cited by the defendant for his claims is two recent decisions by the United States Supreme Court [*Lafler* and *Frye*,] both decided March 21, 2012. For the same reason the Court must find that the expansion of the right to effective assistance of counsel by these two decisions established that defendant's failure to raise the issue on appeal would not constitute *res judicata*, in that the claims he now raises [were] unknown at the time of that appeal or his first petition for post-conviction relief.

(Emphasis sic.)

**{¶13}** Due to the recency of *Lafler* and *Frye*, we look to federal courts for guidance. In *Hestle v. United States*, E.D.Mich. No. 05-40245, 2013 U.S. Dist. LEXIS 37886 (Mar. 19, 2013), the United States District Court for the Eastern District of Michigan, addressed an analogous situation and found that neither *Lafler* nor *Frye* announced a "newly recognized" right. The *Hestle* court stated:

> *Lafler* and *Frye* held that the *Sixth Amendment* right to counsel is violated when a defendant is subject to a harsher sentence because of his or her attorney's constitutionally deficient advice to reject a plea bargain or as a result of his or her attorney's failure to inform him or her of a plea offer from the government.[2]

(Emphasis sic.)

Moreover,

> [t]he Supreme Court, in granting relief in *Lafler* and *Frye*, was rather explicit that it was not creating a new right, but applying the existing right to effective assistance of counsel and test from *Strickland*. In both *Frye* and [*Lafler*], the Supreme Court said: '[T]he prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been

---

[2] The right to effective assistance of counsel during the plea bargaining process has been recognized for decades. *See McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (during plea negotiations, criminal defendants "are entitled to the effective assistance of competent counsel"); *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (holding that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel"); *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1480-1481, 176 L.Ed.2d 284 (2010) ("Before deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel.") (Citation omitted.)

accepted or after a trial leading to conviction' with resulting harsh consequences. *Lafler*, 132 S.Ct. at 1390; *Frye*, 132 S.Ct. at 1408-09.

(Emphasis sic.) *Hestle*.

The *Hestle* court further noted that

the majority of the circuits [courts] are in accord that *Lafler* and *Frye* do not establish a new right for the purposes of § 2255. *See Williams v. United States*, 705 F.3d 293, 2013 WL 238877, *1 (8th Cir. 2013)("We therefore conclude, as have the other circuit courts of appeals that have addressed the issue, that neither [*Lafler*] nor *Frye* announced a new rule of constitutional law."); *Buenrostro v. United States*, 697 F.3d 1137, 1140 (9th Cir.2012); *In re King*, 697 F.3d 1189 (5th Cir.2012) (per curiam); *Hare v. United States*, 688 F.3d 878, 879-80 (7th Cir.2012); *In re Perez*, 682 F.3d 930, 932-34 (11th Cir. 2012); *United States v. Lawton*, Case No. 12-3240, 2012 U.S. App. LEXIS 25936, 2012 WL 6604576 (10th Cir. 2012); *see also United States v. Ocampo*, 2013 U.S. Dist. LEXIS 10666, 2013 WL 317621 (E.D.Mich. 2013) ("The right recognized by the Supreme Court in [*Lafler*] *v. Cooper* and *Missouri v. Frye* did not announce a 'newly recognized' right made retroactively applicable to cases on collateral review.").

(Emphasis sic.)

**{¶14}** We find these federal court decisions persuasive, and we agree that *Lafler* and *Frye* did not create a new retroactive right as Hicks contends. If an alleged constitutional error could have been raised and fully litigated on direct appeal, the issue is res judicata and may not be litigated in a postconviction proceeding. *State v. Perry*, 10 Ohio St.2d 175, 179, 226 N.E.2d 104 (1967). It is well settled that the doctrine of res judicata bars claims that were raised or could have been raised on direct appeal. *State v. Davis*, 119 Ohio St.3d 422, 2008-Ohio-4608, 894 N.E.2d 1221. Here, Hicks brought a direct appeal from his conviction, moved to reopen his appeal, and then appealed the denial of his first petition for postconviction relief. In each appeal, he failed to raise "the

right of effective assistance of counsel during the plea bargaining phase" argument he now presents. As a result, the issue is barred by res judicata.

{¶15} Moreover, even if we were to consider Hicks's argument, the record provided by Hicks failed to establish ineffective assistance of counsel. As noted by the trial court:

> In the case *sub judice*, * * * the record is devoid of any evidence that there ever was any offer of a seven-year plea [as Hicks contends], let alone a "formal" offer of such.
>
> The only reference cited by defendant appears in the trial transcript, at page 441, as follows:
>
>> [DEFENSE COUNSEL]: * * * The defendant is, in fact, as we know, presumed innocent. The defendant has this presumption with him at all times. Right now he is presumed innocent. He has not pled guilty. Eighteen months ago, when he appeared for his arraignment, he said he didn't do this. He pled guilty — pled not guilty at that arraignment. He's never pled guilty. I believe he was at one time offered seven years for this offense —
>>
>> [STATE]: Objection.
>>
>> THE COURT: That's sustained.
>
> In other words, the sole reference relied upon by the defendant to support his claim of an offer of a seven-year sentence is a statement made by counsel, during the course of his closing argument, as to something he *believed* had been offered — a reference to which the state's objection was sustained by the Court. Even if the state's objection had not been sustained, the statement made by counsel that he "believed" a seven-year offer had been made falls short of evidence that such offer ever was made. * * *
>
> [T]he Court must note that the defendant is now claiming that he did not understand the consequences of the plea offer or of his rights at trial; inasmuch as that offer was referenced at length on the record, and the

defendant was given a full opportunity to express his questions and/or concerns at that time, his failure to do so suggests that this is merely a recent concoction, and in no way an expression of any issues he may have had at the time.

(Emphasis sic.)

**{¶16}** While we disagree with the trial court's analysis, in so far as it determined Hicks relied on a new right to relief that did not exist at the time of his first petition, we nonetheless find that the trial court ultimately reached the proper conclusion by denying Hicks's petition.

**{¶17}** Thus, the sole assignment of error is overruled.

**{¶18}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

LARRY A. JONES, SR., P.J., and
TIM McCORMACK, J., CONCUR