JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, William Marshall, appeals his conviction and sentence from the Cuyahoga County Court of Common Pleas. For the reasons stated below, we affirm the trial court's finding of guilt; however, we vacate the sentence and remand the matter for resentencing.
 {¶ 2} Tony's Delicatessen is located at the corner of Scranton Road and Meyer Avenue in Cleveland, Ohio, and is owned by Fethi Belhouane, a.k.a. "Tony." On Monday, December 13, 2004, at approximately 9:30 p.m., three black males entered the store to rob it. During the robbery two individuals were shot and killed. Because of his involvement in the planning of the robbery, Marshall was charged with three counts of aggravated robbery, one count of burglary, two counts of felony murder, and one count of having weapons while under disability. The testimony at trial revealed that on Friday, December 10, 2004, Marshall, John Williams, L.C. Wainwright, Mario Keith, and James Corbin were at Corbin's house just down the street from Tony's Deli. The five of them discussed robbing Tony's Deli, saying it was an easy "lick" because the owner did not have a gun and hid a lot of cash above the counter. Marshall provided Williams with a .38 caliber revolver. The plan was for Williams and Wainwright to rob the deli and then call Marshall; they would all then meet at Marshall's cousin's house to divide up the money and return the gun to Marshall. Keith drove Wainwright and Williams to the deli, but there were too many people inside, so they returned to Corbin's house. Wainwright told Marshall that he
wanted another gun.
 {¶ 3} On Saturday, December 11, 2004, all five males were at Corbin's house again discussing the robbery. Marshall suggested that they tie Tony up and provided plastic ties to Wainwright. Again, the plan was to call Marshall after the robbery and to meet at Marshall's cousin's house to divide up the money and return the guns. Keith drove Wainwright and Williams back to the deli. The two went inside, but changed their minds because there were "little kids" inside. On Sunday, December 12, 2004, all five were together again at Corbin's house, and Marshall brought a second gun, a nine millimeter. Williams decided they needed a third person. They discussed who the third person should be, but could not decide.
 {¶ 4} On Monday, December 13, 2004, all five were to meet at Corbin's house. Marshall suggested Sean Rembert for the third person and called him. Marshall then called Williams and told him to pick up Rembert on his way to Corbin's house. The plan was the same. Keith drove the car and dropped off Wainwright, Williams, and Rembert at the deli and then waited around the corner for them. Williams and Rembert had the guns.
 {¶ 5} Buster Ford testified that he saw three men walk into the deli and heard one of them shout, "Give it up, mother f* * *ers," as shots rang out. Buster ran out of the store. Rebecca Cordoves was running behind him; Buster heard another gunshot and saw her fall to the ground outside the store. Williams ordered Tony down to the floor and fired his gun at him but did not hit him. Someone went through Tony's pockets and took his money. Jorge Santiago was ordered to open the cash register, and when he asked the gunman to "hold on," he was shot. He landed on top of Tony. Tony testified that the robbers were searching for money everywhere, knocking things over in the process. After the gunmen left, Tony was able to hit the panic alarm and call 911 on his cell phone. Tony went outside because he could not look at Jorge bleeding to death, and saw Rebecca lying on the ground with her husband crying over her.
 {¶ 6} Tony testified that he knew Marshall, Keith, Corbin, Williams, and Rembert because they were frequent customers. He said Williams was the first person through the door and was the one who shot at him. Tony was not injured. Jorge was shot twice, once in the right arm and once in the chest. Rebecca was shot in the back as she tried to run out of the store. Rebecca was buying baby formula for her newborn.
 {¶ 7} Officer George Kirby was first on the scene of the murders. He observed Rebecca lying on the ground in front of the store, as well as three males running from the store. Officer Kirby pursued the three males, but lost sight of them in an alley near the store. He returned to the store and observed Jorge lying in a pool of blood. EMS transported both victims to MetroHealth Medical Center. Officer Kirby secured the scene for the homicide division.
 {¶ 8} Officer Dympha O'Neill testified that she and her partner responded to the scene and stopped Corbin and Marshall, who were driving a work van in the area. Marshall told the officers he was making deliveries in the area. The van was checked for weapons, and they were sent on their way because they did not match the description of the suspects. Marshall called the police station later that evening to see if he could go back on the road to make more deliveries.
 {¶ 9} All involved in the robbery met at Marshall's cousin's house, which is located in close proximity to Tony's Deli. They went upstairs, and Williams handed the money to Marshall. Marshall divided the cash into six piles. He took approximately $250. The guns were returned to Marshall.
 {¶ 10} Rita Nieves testified that she saw Marshall at his cousin's house on the night of the murders. She said all of them rushed upstairs and then came back down ten to fifteen minutes later. She saw someone with a gun, but was not sure which one was carrying it.
 {¶ 11} Geri Mayberry lives with Corbin and has three children with him. She testified that Marshall, Keith, Williams, and Wainwright were at her house the days preceding the robbery. She testified that she saw Marshall with a gun at her house.
 {¶ 12} Keith, the getaway driver, pled guilty to two counts of involuntary manslaughter and one count of aggravated robbery. Wainwright, who entered the store, pled guilty to two counts of murder and one count of aggravated robbery. Wainwright and Keith testified on behalf of the state.
 {¶ 13} Three spent shell casings were recovered from the scene; all were fired from the same nine millimeter handgun. It was determined that the .38 caliber pellets recovered from both victims were fired from the same gun that was found in Marshall's boat, which was stored in his girlfriend's backyard. The nine millimeter handgun was never recovered because Marshall gave it to another "guy" who "needed a gun."
 {¶ 14} Marshall took the stand on his behalf and denied being involved in the planning of the robbery. He insisted that he gave the guns to Corbin to sell to Williams and Rembert. Marshall testified that his four-page typewritten statement, in which he admits his involvement in the robbery but minimizes it, was fabricated by Detectives Veverka and Metzler. He claimed that he never read his statement because he was crying and had high blood pressure, but he did admit he signed it and made a correction on page one.
 {¶ 15} Marshall was found guilty, by the jury, of three counts of aggravated robbery, with firearm specifications; one count of aggravated burglary, with a firearm specification; and two counts of murder with firearm specifications. Marshall was then found guilty, by the court, of having a weapon while under disability. He was sentenced to a total of 42 years to life in prison, credit for time served on the having a weapon while under disability count.
 {¶ 16} Marshall appeals, advancing four assignments of error for our review. His first and second assignments of error state the following:
 {¶ 17} "I. The state failed to present sufficient evidence to sustain a conviction against Appellant."
 {¶ 18} "II. Appellant's convictions are against the manifest weight of the evidence."
 {¶ 19} Under these two assignments of error, Marshall argues that there is no credible evidence that he was involved in the crimes or that he knew the guns were to be used in a robbery. He also argues that his actions were not the proximate cause of the victims' deaths. Finally, Marshall argues that the only testimony implicating him in the crimes was from co-defendants, whose testimony was self-serving, inconsistent and not credible.
 {¶ 20} When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. {¶ 21} In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is whether "there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Leonard,104 Ohio St.3d at 68 (internal quotes and citations omitted).
 {¶ 22} Marshall was convicted as an accomplice pursuant to R.C.2923.03(A) and (F) because he was not present during the commission of the crimes.
 {¶ 23} The Complicity statute states, in pertinent part:
 "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 "(1) Solicit or procure another to commit the offense;
 "(2) Aid or abet another in committing the offense;
 "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 "* * * "(F) Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as if he were a principal offender. * * *" R.C. 2923.03.
 {¶ 24} A review of the record reveals that Marshall participated in the planning of the robbery from its inception. In addition, he provided the guns and the third person. Marshall provided the meeting place, divided up the money, and hid the guns. After viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes proved beyond a reasonable doubt. Furthermore, there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt. The jury did not lose its way.
 {¶ 25} Marshall's first and second assignments of error are overruled.
 {¶ 26} "III. The trial court erred by ordering convictions and consecutive sentences for separate counts because the offenses are allied offenses pursuant to R.C. 2941.25 and they are part of the same transaction under R.C. 2929.14."
 {¶ 27} Marshall argues that the trial court erred when it sentenced him to consecutive sentences, because the offenses are allied offenses of similar import. In addition, Marshall argues that the court should not have ordered the firearm specifications to run consecutive.
 {¶ 28} Marshall is mistaken. Although the journal entry [1] is confusing, the trial court did not order the aggravated robbery counts, aggravated burglary count, and the murder counts to run consecutive to each other. The court ordered the murder counts to run consecutive to each other, but the aggravated robbery counts and burglary count were run concurrent to each other and concurrent to the murder counts. The court merged the firearms specifications on the aggravated robbery counts, but ordered it to run consecutive to the firearm specifications on the aggravated burglary count and the murder counts for a total of 42 years to life.
 {¶ 29} We will first address the firearm or gun specifications that were ordered to run consecutive to each other. R.C. 2929.14 (D)(1)(b) provides the following:
 "A court shall not impose more than one prison term on an offender under division (D)(1)(a) of this section [governing sentencing on firearm specifications] for felonies committed as part of the same act or transaction."
 {¶ 30} The Supreme Court of Ohio has defined "transaction" as "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." State v. Wills (1994),69 Ohio St.3d 690, 691, 1994-Ohio-417.
 {¶ 31} This court has previously held that when "the underlying felonies were clearly committed * * * as part of the same transaction * * * the trial court, pursuant to R.C. 2929.14(D)(1)(a)(i), should have sentenced appellant to only one three-year prison term for a single firearm specification." State v. Santana, Cuyahoga App. No. 87170,2006-Ohio-3843; quoting State v. Evans (Sept. 3, 1998), Cuyahoga App. No.
73018. See, also, State v. Kaszas (Sept. 10, 1998), Cuyahoga App. Nos. 72546, 72547, State v. Gregory (1993), 90 Ohio App.3d 124.
 {¶ 32} In this case, the aggravated robberies, the aggravated burglary, and the two murders were part of the same transaction. They were a series of continuous acts bound together by time, space and purpose, and directed toward a single objective — to rob the store. Consequently, the trial court may sentence Marshall for only one three-year firearm specification.
 {¶ 33} Next we shall address the issue of allied offenses of similar import. In determining whether two separate charges constitute allied offenses of similar import, we must look to Ohio's multiple count statute, R.C. 2941.25, which provides as follows:
 "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 "(B) Where the defendant's conduct constitutes two or more similar offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."
 {¶ 34} The Supreme Court of Ohio analyzed this statute in
State v. Rance (1999), 85 Ohio St.3d 632, 1999-Ohio-291, and held that in order to convict a criminal defendant on multiple charges, the offenses must either be (1) of dissimilar import or (2) if they are of similar import, committed separately or with a separate animus [intent]. Id. at 636. The test for determining whether two offenses are of similar import is whether the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other." Id., citing State v. Jones (1997), 78 Ohio St.3d 12, 13, 1997-Ohio-38. This test must be performed in the abstract, comparing the statutory elements of each offense while ignoring the facts of each particular case. Rance, supra, at 636.
 {¶ 35} Various courts in Ohio have applied the Rance test to two of the statutory offenses at issue in this case — aggravated burglary and aggravated robbery — and concluded that they are of dissimilar import. See State v. Stern (2000), 137 Ohio App.3d 110, 116; State v.Williams (1996), 74 Ohio St.3d 569, 580, 1996-Ohio-91; State v.Lamberson (Mar. 19, 2001), 12th Dist. No. CA2000-04-012. As these
courts have found, aligning the elements of aggravated burglary and aggravated
robbery in the abstract, commission of the one does not entail commission of the
other. Specifically, conviction for aggravated burglary requires proof that the
defendant trespassed in an occupied structure with the purpose of committing a
criminal offense therein while possessing a deadly weapon. R.C.2911.11(A)(2).
Conviction for aggravated robbery does not require any trespass, but requires proof that the defendant both possess a deadly weapon and "either display the weapon, brandish it, indicate that the offender possesses it, or use it" while committing a theft offense. R.C.2901.11(A)(1). Therefore, each offense requires proof of an element that the other does not, and as a result they cannot be allied offenses of similar import. Stern, supra at 116. Marshall also argues that felony murder, in violation of R.C. 2903.02(B), is an allied offense with aggravated robbery. This is not the case, because felony murder can be committed, again viewing in the abstract, without the commission of an aggravated robbery. It can be committed while "committing or attempting to commit an offense of violence that is a felony of the first or second
degree." R.C. 2903.02(B). Furthermore, aggravated robbery can be committed
without the commission of a murder. See R.C. 2911.01. Therefore, they are not allied offenses.
 {¶ 36} In sum, when sentencing a defendant in a multi-count indictment that contains firearm specifications, the trial court must follow theRance test to determine whether the base charges are allied offenses of similar import. The court is to view the charges in the abstract; it should not look at the facts of the case unless the crimes are of similar import. In most situations, case law will provide the answer. Nevertheless, when deciding whether to merge the firearm specifications, the trial court must look at the facts of the individual case in order to determine whether the crimes were a part of the same transaction. Although the crimes may be part of the same transaction and therefore the firearms specifications merge, it does not mean
that the base charges are allied offenses of similar import. The base charges may still be run consecutive to each other. In the case at bar, the trial court erred in running the firearm specifications consecutively, because the crimes were part of the same transaction. Nevertheless, upon remand the trial court may run the base charges consecutive to each other because they are not allied offenses of similar import.
 {¶ 37} Marshall's third assignment of error is overruled in part as it pertains to the allied offenses of similar import, and sustained in part as it pertains to the firearm specifications.
 {¶ 38} "IV. The trial court erred by ordering Appellant to serve a consecutive sentence without first considering a concurrent sentence and by making findings not supported by the record."
 {¶ 39} In light of the recent decision of the Supreme Court of Ohio inState v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, we vacate Marshall's entire sentence and remand the case for a new sentencing hearing.
 {¶ 40} The Foster court found that judicial findings are unconstitutional and that several provisions of Senate Bill 2 are unconstitutional. Id. The court concluded that a trial court is no longer required to make findings or give its reasons for imposing maximum, consecutive, or more than the minimum sentences. Id. TheFoster holding applies to all cases on direct review. Id. Because the trial court sentenced Marshall under unconstitutional statutory provisions, he must be resentenced.
 {¶ 41} On remand, the parties may stipulate to the sentencing court's acting on the record before it. Id. The trial court shall consider those portions of the sentencing code that are unaffected by Foster and has full discretion to impose a prison term within the statutory range. Id. The trial court is not barred from imposing consecutive sentences. Id.
 {¶ 42} Accordingly, we sustain Marshall's fourth assignment of error. We further find Marshall's argument that Foster violates his right against ex post facto legislation to be premature. This issue is not ripe for our review, because Marshall has not yet been sentenced underFoster. See State v. Chambers, Cuyahoga App. No. 87221, 2006-Ohio-4889;State v. Ervin, Cuyahoga App. No. 87333, 2006-Ohio-
4498.
 {¶ 43} This matter is affirmed as to the trial court's finding of guilt, but the sentence is vacated and the case remanded for resentencing.
It is ordered that appellant recover of said appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the
common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] The journal entry reads, in pertinent part: "The court imposes a prison sentence at the Lorain Correctional Institution of 42 years to life. Defendant sentenced on counts 6, 7, 8 [aggravated robberies] to 9 years plus 3 years on the gun spec. Gun specs on counts 6, 7, and 8 merged. On count 12 [aggravated burglary] defendant sentenced to 9 years plus 3 years on the gun spec. On count 13 [murder] defendant sentenced to 15 years to life plus 3 years on the gun spec; on count 14 [murder] defendant sentenced to 15 years to life plus 3 years on the gun spec. Counts 6, 7, 8, and 12 to run concurrently to each other and concurrently to counts 13 and 14. Counts 13 and 14 to run consecutive to each other and consecutive to the gun specs in all counts. Defendant sentenced to time served on count 18 [having weapon under disability]."