JOURNAL ENTRY AND OPINION
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct. Prac.R. II, Section 2(A)(1).
{¶ 1} After a jury trial, defendant-appellant Sean Rembert was convicted of *Page 2 
four counts of aggravated murder with felony murder and firearm specifications, three counts of aggravated robbery with firearm specifications, and two counts of kidnapping with firearm specifications. The trial court additionally found him guilty of having a weapon while under disability.
 {¶ 2} After receiving a sentence of life in prison without parole, Rembert asserts in this appeal that none of his convictions is supported by either sufficient evidence or the weight of the evidence. He additionally asserts that prosecutorial misconduct compromised the fairness of his trial.
 {¶ 3} Following a review of the extensive record, this court finds that all of Rembert's assignments of error lack merit. Therefore, his convictions are affirmed.
 {¶ 4} This case arose from an incident that occurred on the night of December 13, 2004. This court previously set forth some of the details of that incident in State v. Marshall, Cuyahoga App. No. 87334,2006-Ohio-6271. Briefly stated, during the commission of a convenience store robbery in Cleveland, two people, customer Rebecca Cordoves and clerk Jorge Santiago, were shot and killed.
 {¶ 5} The police investigation eventually led to the indictment of six men, viz., William Marshall, James Corbin, Mario Keith, John Williams, L. C. Wainwright, and appellant Rembert.
 {¶ 6} The state indicted together the three men whom it alleged directly were involved in the shooting. Thus, Rembert was indicted with John Williams and L.C. *Page 3 
Wainwright. As it pertained to Rembert, the indictment originally charged him as follows.
 {¶ 7} Counts one through four, aggravated murder with firearm, felony murder, mass murder ("MM"), "murder-to-escape-accounting for another crime" ("MEAC"), and repeat violent offender ("RVO") specifications, plus a notice of prior conviction ("NPC"). Counts one and two pertained to Cordoves, while counts three and four pertained to Santiago. The counts were presented with alternative theories, i.e., committing the offense with prior calculation and design, and committing the offense in the commission of aggravated robbery.
 {¶ 8} Count five charged Rembert with attempted murder, with specifications.
 {¶ 9} Counts six, seven and eight charged Rembert with aggravated robbery, with firearm and RVO specifications and a NPC.
 {¶ 10} Counts nine, ten, and eleven charged Rembert with kidnapping, with firearm and RVO specifications and a NPC. Count twelve charged Rembert with aggravated burglary, with specifications. Counts eleven and twelve subsequently were dismissed by the state.
 {¶ 11} The last count that pertained to Rembert was Count sixteen; it charged him with having a weapon while under disability.
 {¶ 12} Rembert entered pleas of not guilty and was assigned counsel for his case, which carried the potential of the death penalty. The record reflects that the *Page 4 
case proceeded to a jury trial.
 {¶ 13} As it relates to the presentation of the state's evidence, at the time of Rembert's trial, Marshall's trial was concluded, and Corbin, Wainwright, and Keith had entered pleas in their separate cases. Williams' case still was pending for trial. Corbin, Wainwright, Keith and Williams all testified during the state's case-in-chief.
 {¶ 14} At the conclusion of the state's case, Rembert moved for acquittal on the charges, but after listening to the arguments, the trial court denied his motion. Thereafter, the defense rested without presenting evidence; the trial court overruled the renewed motion for acquittal.
 {¶ 15} The jury returned verdicts of guilty of aggravated murder with felony murder and firearm specifications, aggravated robbery with firearm specifications, and kidnapping with firearm specifications. The jury acquitted Rembert of the crime of attempted murder. The trial court subsequently pronounced Rembert guilty of Count sixteen, having a weapon while under disability.
 {¶ 16} The jury ultimately recommended sentences of life without parole eligibility. The trial court accepted the recommendation when imposing sentence.
 {¶ 17} Rembert has filed an appeal of his convictions. He presents three assignments of error, in which he argues that: 1) his convictions are unsupported by sufficient evidence; 2) the prosecutor's misconduct tainted the fairness of his trial; and, 3) his convictions are unsupported by the manifest weight of the evidence. In *Page 5 
light of the record, none of his arguments is persuasive.
 {¶ 18} Rembert's first and third assignments of error essentially claim that since his accomplices' testimony in some respects conflicted, the state failed to prove that he actively participated in the armed robbery of the store. He contends the trial court, therefore, erred in denying his motions for acquittal on the charges, and his convictions must be reversed.
 {¶ 19} A defendant's motions for acquittal should be denied if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crimes has been proven beyond a reasonable doubt. State v. Dennis, 79 Ohio St.3d 421, 1997-Ohio-372;State v. Jenks (1991), 61 Ohio St.3d 259; State v. Bridgeman (1978),55 Ohio St.2d 261. The trial court is required to view the evidence in a light most favorable to the state. State v. Martin (1983),20 Ohio App.3d 172. Thus, circumstantial evidence alone may be used to support even a murder conviction. State v. Anderson (May 12, 1994), Cuyahoga App. Nos. 65378, 65379.
 {¶ 20} With regard to an appellate court's function in reviewing the weight of the evidence, this court is required to consider the entire record and determine whether in resolving any conflicts in the evidence, the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin, supra at 175. *Page 6 
 {¶ 21} This court must be mindful, therefore, that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to consider. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 22} In this case, Corbin, Wainwright, Keith and Williams all testified that Corbin proposed the convenience store as an easy "lick," or place to rob. All testified that, just before the robbery, Marshall requested Rembert to join in the enterprise. When the six men met at Corbin's home, Marshall provided the two guns, a .38 caliber and a defective 9 millimeter.
 {¶ 23} Corbin, Wainwright and Williams remembered that it was Rembert who took the .38 caliber gun. Both Corbin and Keith stated that the store's owner, "Tony" Belhouane, knew them on sight, so they decided to remain away during the robbery. Marshall stayed with Corbin.
 {¶ 24} According to Keith, he drove Wainwright's car to the area, and waited in the car nearby while Wainwright, Williams, and Rembert went inside together. Keith's testimony in this respect was corroborated by the others' and by Rembert's written statement.
 {¶ 25} Belhouane testified that he and his employee, Santiago, were behind the sales counter when the three men entered his store. Cordoves placed her purchase of baby formula on the counter. Another customer, Buster Ford, approached the counter, carrying a beer bottle, when he heard one of the *Page 7 
newcomers shout, "Give it up, * * *." Ford immediately heard shots being fired, so he ran outside. He stated he was closely followed by Cordoves.
 {¶ 26} Belhouane identified Williams as the one who pointed a 9 millimeter gun at him, ordered him to the floor, and then "fire[d at him] right away." While he "played dead," more shots were fired, and Santiago fell on him. Ford testified that as he ran, he heard Cordoves gasp, and saw her fall down.
 {¶ 27} Both Santiago and Cordoves died from gunshot wounds caused by .38 caliber bullets, which were recovered from their bodies. Ballistics analysis of the bullets matched a gun found hidden in Marshall's boot. Williams boasted to some female acquaintances that he committed the murders, but subsequently retracted those claims.
 {¶ 28} Rembert gave a written statement in which he admitted participating in the robbery and admitted carrying one of the weapons. Although Rembert stated Williams carried the .38 caliber and implied Williams was the only shooter, his assertions on these two points were undermined by several inconsistencies contained in his statement and by the 9 millimeter bullet casings recovered at the scene. Moreover, Rembert's assertion that Williams used the .38 caliber gun also were contradicted by Belhouane, Wainwright and Williams, whose testimony was corroborated by Corbin's.
 {¶ 29} In short, when viewed in a light most favorable to the prosecution, there *Page 8 
was consistent, credible evidence to prove not only that Rembert was the third man actively participating in the robbery, but also he was the man who shot and killed Santiago and Cordoves. Based upon the evidence, the trial court correctly concluded Rembert's guilt of the crimes was for the jury to determine. State v. Taylor, Cuyahoga App. Nos. 86626, 86627,2006-Ohio-1736.
 {¶ 30} Similarly, in view of the minor variations in the versions of the incident presented, the jury acted within its prerogative to determine Rembert was a "principal offender" in the aggravated murders, aggravated robberies, and kidnappings of the victims. State v.Gray, Cuyahoga App. No. 83097, 2004-Ohio-1454; State v. Outlaw (Oct. 22, 1992), Cuyahoga App. No. 61194.
 {¶ 31} For the foregoing reasons, Rembert's first and third assignments of error are overruled.
 {¶ 32} Rembert additionally argues in his second assignment of error that prosecutorial misconduct compromised the fairness of his trial. The record, however, fails to support this argument.
 {¶ 33} The conduct of a prosecuting attorney during a trial generally cannot be made a ground of error unless the conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. State v. Papp (1978), 64 Ohio App.2d 203, cited with approval inState v. Maurer (1984), 15 Ohio St.3d 239. Moreover, it has been held a trial court must afford the prosecutor some latitude and *Page 9 
freedom of expression during argument. State v. Apanovich (1987),33 Ohio St.3d 19; State v. Vrona (1988), 47 Ohio App.3d 145.
 {¶ 34} Therefore, a defendant shall be entitled to a new trial only when a prosecutor makes improper remarks and those remarks substantially prejudice the defendant. State v. Tibbets (2001), 92 Ohio St.3d 146;State v. Smith (1984), 14 Ohio St.3d 13. Thus, the test is whether, absent the prosecutor's remarks, the jury would have found appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239, 267.
 {¶ 35} In this case, Rembert first asserts some of the prosecutor's statements during the opening argument were prejudicial. This assertion must be rejected.
 {¶ 36} The record reflects that only one such inflammatory remark was made. Defense counsel immediately objected, and the trial court not only sustained the objection, but admonished the prosecutor. Moreover, the trial court refused to permit the prosecutor to argue to the jury that Cordoves was a "beloved wife and mother." An isolated incident hardly could have prejudiced the entire proceeding.
 {¶ 37} Rembert next asserts a state's witness accidentally blurted out her knowledge that the participants in the robbery had "records," thereby prejudicing the jury. The record, however, demonstrates the trial court sustained defense counsel's objection to this comment and instructed the jury to disregard the testimony. The jury is presumed to follow the trial court's instruction. Pang v. Minch (1990),53 Ohio St.3d 186. *Page 10 
 {¶ 38} Finally, Rembert points to four different remarks the prosecutor made during closing argument to which defense counsel objected. The trial court sustained the objections; thus, the jury understood that those remarks could not be considered during deliberation.
 {¶ 39} Since the record demonstrates the trial court did not permit the prosecutor to make comments exceeding the bounds of propriety, Rembert cannot support his second assignment of error. Consequently, it is overruled.
 {¶ 40} Rembert's convictions are affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, PRESIDING JUDGE and CHRISTINE T. McMONAGLE, JUDGE CONCUR. *Page 1