JOURNAL ENTRY AND OPINION
{¶ 1} After entering guilty pleas to one count of aggravated robbery and two counts of involuntary manslaughter, with firearm specifications, defendant-appellant Mario Keith appeals, asserting the trial court erred in accepting his pleas.
 {¶ 2} Keith presents one assignment of error in which he argues that the trial court failed to ascertain, prior to accepting his pleas, whether the parties had agreed to a particular sentence, which calls into question the validity of those pleas. Upon a review of the record, this court reluctantly agrees that the trial court erred in accepting Keith's pleas, but for a different reason than the one put forward.
 {¶ 3} The record reveals the trial court failed personally to inform Keith of the maximum penalty involved, including the period of postrelease control. The trial court's failure compels this court to vacate his pleas; consequently, his assignment of error must be sustained. State v. Sarkozy, 117 Ohio St.3d 86, 2008-Ohio-509, paragraph two of the syllabus.
 {¶ 4} Keith's convictions, accordingly, are vacated, and this matter remanded for further proceedings. Id.
 {¶ 5} Keith originally was indicted along with five co-defendants as the result of an incident that this court has described in, inter alia,State v. Rembert, Cuyahoga App. No. 88300, 2007-Ohio-2499. The incident concerned the shooting deaths of two people, and the wounding of another, during a convenience store robbery. Keith, himself, as the driver of the "get away car," was charged with the following: three counts of aggravated robbery, with firearm specifications, a notice of prior *Page 3 
conviction and a repeat violent offender specification; two counts of aggravated burglary, with a notice of prior conviction and a repeat violent offender specification; and two counts of murder, with firearm specifications.
 {¶ 6} Keith's case proceeded up to the point that a jury was being chosen before he decided to enter into a plea agreement with the state. As explained by the prosecutor, in exchange for Keith's admission of his role during the incident, and his cooperation in the prosecution of his co-defendants, the state would amend the indictment so that Keith would be charged with only one count of aggravated robbery and two counts of involuntary manslaughter, with three-year firearm specifications, while the remaining charges would be dismissed. The trial court then would be left with the discretion to sentence Keith "anywhere from a 13 year sentence to 33 years as a maximum sentence in jail."
 {¶ 7} Before concluding his remarks, the prosecutor reiterated that Keith would enter pleas of guilty to "two counts of involuntary manslaughter, a charge of aggravated robbery, a three-year gun specification, and the potential is 13 to 33 years in jail with complete and truthful testimony, and the discretion as to where he ends up between 13 to 33 years" was left "entirely" up to the court. Defense counsel acknowledged the prosecutor accurately set forth the terms of the agreement.
 {¶ 8} The trial court at that point addressed Keith and proceeded to outline the constitutional rights he would be relinquishing in entering a plea. Keith indicated *Page 4 
he understood. The trial court requested Keith's pleas to the charges. To each of the amended counts, Keith stated his plea was "guilty." The court found his pleas were "knowingly, intelligently and voluntarily made," and accepted them. The court then set a sentencing date.
 {¶ 9} When Keith's case ultimately was called for sentencing, the trial court imposed consecutive terms of three years for the firearm specifications, five years for the aggravated robbery conviction, and concurrent terms of ten years for each of the involuntary manslaughter convictions, for a total term of eighteen years. Prior to concluding the sentencing hearing, the court explained that Keith would be subject to certain terms of postrelease control.
 {¶ 10} This court has permitted Keith to file a delayed appeal of his convictions. He presents one assignment of error, as follows:
 "The trial court abused its discretion by accepting the appellant's guilty plea (sic) without first inquiring as to the appellant (sic) specific understanding of the plea agreement."
 {¶ 11} Keith argues that the transcript of the sentencing hearing raises a question concerning whether he believed he would receive a minimum sentence of thirteen years in exchange for his fulfillment of his responsibilities under the terms of the plea agreement. He thus asserts the trial court erred in accepting his pleas without inquiring into Keith's understanding with respect to the sentence. *Page 5 
 {¶ 12} Keith's assignment of error thus directs this court's attention to the plea hearing. Having been so directed, this court cannot ignore the fact that postrelease control was neither discussed by the parties nor mentioned during the plea hearing. Thus, although this court cannot agree with Keith's specific argument, a review of the record demonstrates his assertion itself is correct. The trial court committed plain error in accepting his pleas. State v. Conrad, Cuyahoga App. No. 88934, 2007-Ohio-5717, ¶ 5.
 {¶ 13} Prior to accepting a guilty plea, Crim. R. 11(C)(2) requires the trial court to "personally address" a defendant to ensure that "the defendant is making the plea with an understanding of the maximum penalty involved." Id., ¶ 6. The requirement is met by "substantial compliance," which means that, under the totality of the circumstances, the defendant "subjectively understands the implications of his plea * * *." State v. Nero (1990), 56 Ohio St.3d 106, 108.
 {¶ 14} "Postrelease control [, too,] is part of the offender's sentence." State v. Barnes, Cuyahoga App. Nos. 86654, 86655,2006-Ohio-5939, ¶ 5. Therefore, R.C. 2943.032(E) requires the trial court, prior to accepting a plea for which a prison term will be imposed, to provide the defendant with information "in a reasonably thorough manner" pertaining to postrelease control. State v.Bingham, Cuyahoga App. No. 88080, 2007-Ohio-1161, ¶ 7. *Page 6 
 {¶ 15} Keith sought to enter pleas to several charges in this case. Pursuant to R.C. 2929.14(A)(1), a first-degree felony conviction for aggravated robbery carries a potential term of "three, four, five, six, seven, eight, nine, or ten years." A charge of involuntary manslaughter under R.C. 2903.04(A) carries a mandatory ten-year term. In addition, the firearm specification attached to the aggravated robbery count carried a mandatory term of three years, to be served prior to and consecutive to the terms imposed on the other charges. R.C. 2941.145. Furthermore, Keith's first-degree felony convictions carried mandatory terms of five years of postrelease control. R.C. 2967.28(B)(1).
 {¶ 16} The trial court in this case, however, neverpersonally informed Keith of any of the maximum penalties involvedat all prior to accepting his pleas, i.e., it neither stated which potential penalty applied to which charge, nor mentioned anything concerning postrelease control. State v. Sarkozy, supra. The transcript of the plea hearing demonstrates, rather, that only the prosecutor mentioned the range of penalties. State v. Conrad, supra.
 {¶ 17} Even if this information was correct, the prosecutor never distinguished which penalty applied to which offense, and the trial court never subsequently clarified the matter for Keith's benefit. Moreover, the trial court never informed Keith he would be subject to postrelease control.[1] *Page 7 
 {¶ 18} This was inadequate to constitute "substantial compliance" with the requirements of the rule. State v. Sarkozy, supra; see also,State v. Jones (May 4, 2001), Cuyahoga App. No. 77657; State v.Barnes, supra. This court cannot ignore the strong mandate set forth in paragraph two of the syllabus of State v. Sarkozy, supra, which states:
 {¶ 19} "If the trial court fails during the plea colloquy to advise a defendant that the sentence will include a mandatory term of postrelease control, the court fails to comply with Crim. R. 11, and the reviewing court must vacate the plea and remand the case." (Emphasis added.)
 {¶ 20} The strength of that language permits no alternatives for even the most artful or inventive of appellate arguments; consequently, despite Keith's attempts to preserve the benefit that inured to him as the result of the plea agreement, this court is constrained bySarkozy to vacate his pleas in their entirety.[2] *Page 8 
 {¶ 21} Since the trial court thus failed to comply with its duties as outlined in CrimR. 11(C), this court is constrained to sustain Keith's assignment of error. State v. Sarkozy, supra; State v. Bingham, supra.
 {¶ 22} Accordingly, Keith's convictions are vacated and his sentence is reversed.
 {¶ 23} This case is remanded for further proceedings.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for further proceedings.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and ANN DYKE, J., CONCUR
[1] The trial court's explanation of postrelease control during the sentencing hearing could not subsequently cure the error caused by the omission which occurred during the plea hearing. State v. Sarkozy, supra at ¶ 22.
[2] A review of the record in this case reveals the adversarial parties were represented by among the best advocates who practice criminal justice in this jurisdiction. Under these circumstances, it is difficult to believe that Keith was not advised by his attorney of the details of postrelease control. Furthermore, in view of Keith's potential of receiving two life sentences, separate terms for five first-degree felonies, plus a three-year term for a firearm specification, it also is difficult to believe that the trial court's failure to mention postrelease control would have been a "deal-breaker" to him. Indeed, Keith's appellate counsel carefully framed his argument in an effort, albeit unsuccessful, to preserve the "deal" for his client. The foregoing is mentioned only in order to point out that Justice Lanzinger's dissent in Sarkozy seems to be more grounded in the realities of criminal justice than does the majority opinion. *Page 1